ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- ) | |
| ) | |
| Austin Logistic Services Company ) | ASBCA Nos. 60916, 61052 |
| ) | |
| Under Contract No. H92237-15-C-7004 ) | |

APPEARANCE FOR THE APPELLANT:     Mr. Ismail Khurami
                                  CEO/President

APPEARANCES FOR THE GOVERNMENT:   Jeffrey P. Hildebrant, Esq.
                                   Air Force Deputy Chief Trial Attorney
                                  Capt Justin D. Haselden, USAF
                                  Lori R. Shapiro, Esq.
                                   Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE PAUL

Appellant Austin Logistic Services Company (Austin) filed a notice of appeal with the Board on 6 December 2016 without ever presenting its claim to the Air Force's contracting officer (CO); and the Board docketed the appeal as ASBCA No. 60916. The Air Force moved to dismiss the appeal for lack of jurisdiction. Subsequently, Austin submitted the same claim to the CO who denied it in its entirety. A hearing was held on the merits for both appeals and both parties have filed post-hearing briefs. We dismiss ASBCA No. 60916 for lack of jurisdiction and deny the appeal in ASBCA No. 61052.

FINDINGS OF FACT

1. On 30 January 2015, the United States Special Operations Joint Task Force-Afghanistan (SOJTF-A) awarded Austin Contract No. H92237-15-C-7004 to provide 18 Morale Welfare and Recreation (MWR) facility workers at Camp Alpha, Bagram Airfield in Afghanistan (R4, tab 1 at 1-3).[1] The contract's performance period was 12 months, commencing on 1 February 2015; however, funding was originally limited to a 7-month period, encompassing 1 February 2015 to 31 August 2015 (R4, tab 1 at 3).

2. The contract's scope of work was described in section 1 of the Performance Work Statement (PWS). It provided:

> The USG seeks to contract MWR facility workers at Camp Alpha, Bagram Airfield, Afghanistan. MWR workers are for

---

[1] Since the contract was administered by representatives of the United States Air Force, we refer to respondent as either "Air Force" or "government" rather than "SOJTF-A."

the maintenance MWR facilities. MWR facilities are defined as fitness centers, laundry facilities, and internet cafes as specifically identified by Contracting Officer's Representative. Upkeep of the facilities is defined as minor maintenance, welfare, cleanliness, and sanitation.

2. Currently, Camp Alpha has two internet cafes, two laundry facilities and two fitness centers which require services under this PWS.

3. Hours of Operation. MWR workers shall be available 24 hours a day, 7 days a week.

4. Quality Control. The contractor shall establish and maintain a complete quality control program for the performance requirements of this contract.

(R4, tab 2 at 1)

3. On 18 February 2015, the CO executed Modification No. P00001 to the contract which extended "the period of performance for labor services from seven (7) months to twelve (12) months of service." This resulted in a total performance period under the contract of "1 February 2015 to 31 January 2016." The total fixed-price of the contract was adjusted upward to $144,595.20. (R4, tab 3 at 1)

4. On 26 January 2016, the CO executed Modification No. P00003 which exercised an option to extend contractual services from 1 February 2016 to 31 July 2016. The fixed-price of the contract was increased to $203,142.80. (R4, tab 6 at 1)

5. As awarded, the contract contained AFARS 5152.225-5908, GOVERNMENT FURNISHED CONTRACTOR SUPPORT (MAY 2012), which provided, *inter alia*, that Austin's employees were entitled to billeting on Camp Alpha as part of government-furnished contractor support (R4, tab 1 at 10). Also incorporated into the contract by reference was FAR 52.212-4, TERMS AND CONDITIONS—COMMERCIAL ITEMS (MAY 2014) (*id.* at 14). Finally, the contract also incorporated by reference DFARS 252.225-7041, CORRESPONDENCE IN ENGLISH (JUN 1997), which stated:

> The Contractor shall ensure that all contract correspondence that is addressed to the United States Government is submitted in English or with an English translation.

(R4, tab 1 at 14)

2

6. On 28 November 2015, the CO forwarded a cure notice to Austin, in which she stated in pertinent part:

> 1. You are notified that the Government considers your failure to perform contract H92237-15-C-7004 in accordance with the Performance Work Statement (PWS) a condition that is endangering performance of the contract. Therefore, unless this condition is cured within 10 days after receipt of this notice, the Government may terminate for default under the terms and conditions of this contract.
>
> 2. On 25 November 2015 the SOJTF-A Contracting Officer was notified that Austin Logistic Services Co. has been failing to meet the requirement in accordance with (IAW) the PWS. IAW the PWS the following issues need to be corrected within 10 days after receipt of this notice.
>
>> A. *Section 4 paragraph 1 of the PWS*; The contractor shall provide (18) MWR workers.
>>
>> B. *Section 5 paragraph 7*; The Contractor is responsible for all immigration and visa requirements associated with bringing Third Country Nationals into Afghanistan.
>
> 3. Please acknowledge receipt of this letter in writing and state what action is being taken to cure the delinquency.

(R4, tab 10)

7. On 4 December 2015, Austin responded to the cure notice with a "TCN [Third Country Nationals] Mobilization & Demobilization Action Plan." It indicated that it would resolve the TCN visa problem by hiring new service employees from Uganda. (R4, tab 11) The CO approved Austin's "Plan of Action" on 11 December 2015; she stated further that if Austin failed "to implement the attached Plan of Action this contract may be terminated for default" (R4, tab 13).

8. On 20 May 2016, LTC Christopher C. Bresko, the Chief of Staff at Camp Alpha, notified Austin in writing that its representatives were denied access to the base "effective immediately" (R4, tab 14). Austin's access to the base was not subsequently restored (tr. 23).

3

9. On the 24 May 2016, Elijah T. Felton, an Air Force CO, issued a stop work order to Austin under the contract (R4, tab 15). Austin did not perform any further work under the contract and did not submit invoices for the months of June and July 2016 (R4, tabs 7, 16).[2] The extended contractual term expired on 31 July 2016 (finding 4).

10. On 7 December 2016, the Board docketed Austin's appeal filed with the Board on 6 December 2016 as ASBCA No. 60916, in which it claimed $66,820 under the contract (ex. G-1 at 1, 8). However, as of that time, the record demonstrates that Austin had not filed its claim with the CO (R4, tab 19 at 1). Accordingly, on 6 January 2017, the government moved to dismiss ASBCA No. 60916 for lack of jurisdiction. Austin responded to the government's motion, contending that it "brought up the settlement issue, however [the CO] never replied to any of my emails." However, Austin never asserted that it filed a claim with the CO. Accordingly, we find that Austin did not file a claim with the CO prior to initiating the above-mentioned appeal. The Board held the motion in abeyance pending a decision on the merits.

11. On 12 January 2017, Austin subsequently filed its claim with the CO (R4, tab 19 at 1). The claim was forwarded by an unnamed project manager on behalf of Austin's president and CEO, Mr. Ismail, under Mr. Ismail's name. The claim encompassed three pages: a cover letter; a chart containing five claim items: "Invitation," "Work Permit/License for Worker," "Visa for Workers," "Living Facility for Workers," and "Transportation"; and an unidentified foreign language document. The total amount of the claim was $66,820. Austin provided no backup or substantiation for any of the five discrete claim items. (R4, tab 20 at 1-3) However, it subsequently submitted a translation of the foreign language document which stated that it was a lease agreement for an 8 room, 160 square meter apartment for 6 months for $7,400 rent per month which totaled $44,400 (R4, tab 21). The latter amount was stated in Austin's claim as reflecting the "Living Facility for Workers" (R4, tab 20 at 2). This represented the first instance when Austin informed the CO that it had provided a "living facility for workers" connected with this contract (R4, passim). The original foreign language document and the translation were both undated (R4, tab 20 at 2, tab 21).[3]

12. In a final decision issued on 2 February 2017, the CO denied Austin's claim in its entirety. He wrote, in pertinent part:

> a) On January 12, 2017 you submitted your claim. Your claim contained a contract on page three that was not translated into English (Attachment 1). On January 15, 2017

---

[2] Austin submitted 16 invoices under the contract and was paid in full for its work (R4, tabs 7, 16).

[3] The contract itself provided that Austin's workers were entitled to billeting on Camp Alpha (finding 5).

4

you were emailed by Capt Jonathan Yap stating the contract provided needed to be translated. On January 16, 2017 you provided a translated contract for renting an apartment for 6 months (Attachment 2). This translation did not state the dates of the rental. Your contract did not provide proof of when the apartment was rented.

b) On January 12, 2017, you stated in the same email you submitted your claim, "Sir, the Afghan Government does not give any receipt for Visa and Work Permit/License." (Attachment 3) On January 23, 2017 Contact Specialist Brent Robinson contacted the Ministry of Foreign Affairs for the Afghanistan Government at phone # 0093 (0) 20 2100372. A representative stated that the Government does provide receipts.

(R4, tab 22 at 1)

13. On 8 February 2017, Austin appealed the CO's final decision. The Board docketed the protective appeal as ASBCA No. 61052; its factual basis is the same as that in ASBCA No. 60916 which was never presented to the CO.

14. After filing its appeal with the Board, Austin forwarded an email to the CO in which it stated that "the Apartment lease started from 6 Dec 2015 to 6 May 2016" (R4, tab 23 at 1). Austin subsequently forwarded a second lease agreement in a foreign language with the dates "7 Oct 2016" and "7 May 2016" appearing in the right-hand corner. In addition, the "$44400" and "$7400" were handwritten at the bottom of the first paragraph, along with the date "7 May 2016." (App. supp. R4, tab 4)

15. Austin was asked to provide a translation of this document pursuant to DFARS 252.225-7041 (supp. R4, tab 6 at 1; finding 5); however, Austin refused to provide any further translations (supp. R4, tab 6 at 1).

16. On 2 May 2017, Austin forwarded a "List of Incurred Cost" to the Air Force (supp. R4, tab 2 at 1). The list contained four items: "Apartment Lease," "4 Security Guards for Workers," "Cook," and "Watchman." Each item was priced in monthly unit prices which totaled $64,800. (App. supp. R4, tab 3 at 1-2) Aside from the belatedly-provided untranslated lease, Austin provided no substantiation for its "incurred costs" (tr. 33). In its email of 7 May 2017, Austin stated that it had "sent all the documents related to this appeal" (supp. R4, tab 3 at 1).

5

DECISION

The Air Force has moved to dismiss this appeal for lack of jurisdiction because Austin never submitted a written claim with a sum certain to a CO prior to the appeal being filed. Under the Contract Disputes Act (CDA), 41 U.S.C. § 7103, the government contends, the lack of a written claim presented to the CO precludes the Board from having jurisdiction to consider this appeal. (Gov't mot. at 1) We agree. The Board's jurisdiction under the CDA is dependent upon a contractor's prior submission of a proper claim to a CO for a decision. 41 U.S.C. § 7103(a); *Lael Al Sahab & Co.*, ASBCA No. 58346, 13 BCA ¶ 35,394. As we found that Austin failed to submit a claim to the CO prior to initiating the appeal (finding 10), we lack jurisdiction to entertain the appeal.

*ASBCA No. 61052*

Pertaining to the subsequent claim that was submitted to the CO for a final decision (and which relief was ultimately denied), we conclude that we have jurisdiction over this appeal.

It it is undisputed that Austin was paid for all the work which it performed (finding 9). Regarding the claim which it forwarded to the CO, as well as its belatedly-submitted "List of Incurred Cost," Austin has provided no substantiation to support its claim. The contract itself provided that Austin's employees were entitled to billeting on Camp Alpha (finding 5). Moreover, the translated lease which it ultimately provided had no dates and was otherwise vague and unspecific. Its belated submission of a second untranslated lease agreement did not comply with the contractual requirements to provide documents in English. As our appellate court held in *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 767 (Fed. Cir. 1987):

> [T]he claimant bears the burden of proving the fact of loss with certainty, as well as the burden of proving the amount of loss with sufficient certainty so that the determination of the amount of damages will be more than mere speculation.

Austin has failed to meet this burden. Therefore, we deny its appeal in ASBCA No. 61052.

## CONCLUSION

The appeal in ASBCA No. 60916 is dismissed for a lack of jurisdiction; the appeal in ASBCA No. 61052 is denied.

Dated: 9 January 2018

MICHAEL T. PAUL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 60916, 61052, Appeals of Austin Logistic Services Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

7